FILED

John R. St. John (CA Bar No. 54643)
Michael R. Minguet (CA Bar No. 204027)
ST. JOHN, WALLACE, BRENNAN & FOLAN LLP
21515 Hawthorne Blvd., Suite 1120
Torrance, California 90503-6504
Telephone: (310) 792-1075
Facsimile: (310) 792-0635
E-mail: jrstjohn@swbf.net

11 MAY 16 PH 2: 33

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

Attorneys for Plaintiffs
James LeBlanc; Pear Point Project, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| James LeBlanc, an individual, and Pear Point Project, LLC, a Washington limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> Motion Picture Industry Health Plan, a trust; Motion Picture Industry Pension Plan, a trust, <br><br> Defendants. | CASE No. <br><br> **CV11  04181  GAF**  (Ex) <br><br> COMPLAINT (ERISA) FOR: <br><br> (a) Declaratory Relief; <br> (b) Enforcement of Rights Under Employee Benefit Plan; <br> (c) Breach of Fiduciary Duty; <br> (d) Clarification of Rights to Pension Benefits; <br> (e) Recovery of Civil Penalty. |

Plaintiffs James LeBlanc ("Mr. LeBlanc") and Pear Point Project, LLC ("Pear Point") allege as follows:

### NATURE OF ACTION

1.    This action arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1001 et seq. Plaintiffs seek a declaration from this Court that all health plan benefits paid to Mr. LeBlanc while he was employed by

COMPLAINT

1  Pear Point were properly paid. Plaintiffs also seek to enforce Mr. LeBlanc's rights
2  to pension benefits arising from his employment by Pear Point. Finally, Mr. LeBlanc
3  seeks to recover statutory penalties for the Defendant Pension Plan's failure to
4  provide required information.

## JURISDICTION AND VENUE

6      2.      This Court has jurisdiction of this action under Section 502(e)(1) of
7  ERISA, 29 U.S.C. Section 1132(e)(1). This Court is the appropriate venue for this
8  action under ERISA Section 502(e)(2), 29 U.S.C. Section 1132(e)(2) because both
9  Defendants are administered within this District.

## PARTIES

11     3.      Mr. LeBlanc is an individual who resides in Friday Harbor, Washington.
12  Mr. LeBlanc is, and at all relevant times has been, a participant in the Defendants as
13  defined in ERISA Section 3(7), 29 U.S.C. Section 1002(7).

14     4.      Pear Point is a limited liability company organized and existing under
15  the laws of the State of Washington. Its principal place of business is located in
16  Friday Harbor, Washington. At all material times Mr. LeBlanc has owned the entire
17  membership interest in Pear Point.

18     5.      Defendants Motion Picture Industry Health Plan ("Health Plan") and
19  Motion Picture Industry Pension Plan ("Pension Plan") are labor-management trust
20  funds organized pursuant to Section 302(c) of the Labor Management Relations Act,
21  29 U.S.C. Section 186(c). The Plans are also "employee benefit plans" as defined
22  in ERISA Section 3(3), 29 U.S.C. Section 1002(3). The Plans are maintained
23  pursuant to various collective bargaining agreements in the motion picture industry.
24  Each Plan is governed by a Board of Directors that consist of representatives
25  appointed by the participating unions and employers or employer associations. Both
26  Plans are administered in Studio City, California.

27
28

COMPLAINT

## FACTS

6.    Prior to 2005 Mr. LeBlanc worked in the motion picture industry as a director of photography. He was employed by various producers who were parties to collective bargaining agreements that required the producers to make contributions to the Plans on Mr. LeBlanc's behalf.

7.    For most periods prior to 2005, Mr. LeBlanc worked sufficient hours for union producers to maintain benefit eligibility under the Health Plan. However, in 2004 opportunities for employment with union producers diminished, and Mr. LeBlanc was not able to work enough hours to maintain his Health Plan eligibility. Mr. LeBlanc knew that there were business opportunities with non-union producers, but also knew that because these producers did not participate in the Plans he would receive no Plan benefits if he worked for them.

8.    In mid-2005 Mr. LeBlanc spoke with a representative of IATSE Local 600 ("Local 600"). Local 600 is one of the various unions whose members participate in the Plans. The representative told Mr. LeBlanc that if he formed his own company, and if his company signed a collective bargaining agreement with Local 600, his company could perform services for non-union producers and still make contributions to the Plans on behalf of Mr. LeBlanc.

9.    In reliance upon this advice Mr. LeBlanc formed Pear Point. On June 12, 2005, Pear Point entered into a collective bargaining agreement with Local 600. The collective bargaining agreement required Pear Point to make contributions to the Plans for all work performed by its employees, including Mr. LeBlanc. Pear Point continued to be a party to such collective bargaining agreement, or a successor thereto, until July 2009, when it ceased to do business.

10.    Pear Point performed photography services for various producers following its entry into the collective bargaining agreement with Local 600. Until late 2006 Mr. LeBlanc was Pear Point's only employee, and all Pear Point services

COMPLAINT

1    were rendered by him.

2       11.    At all relevant times, Pear Point timely submitted contributions to the
3 Plans on behalf of Mr. LeBlanc as required by the collective bargaining agreement
4 with Local 600.

5       12.    Sometime in 2006 a representative from Local 600 told Mr. LeBlanc that
6 loan-out companies could not participate in the Plans, and that Pear Point had to have
7 other employees besides Mr. LeBlanc to avoid being deemed a loan-out company.
8 The Plans define a "loan-out company" to mean an entity whose owner is the entity's
9 only employee.

10       13.    Pear Point in fact employed individuals in addition to Mr. LeBlanc in
11 2006, 2007, and 2008. The other individuals were Jason LeBlanc and Douglas
12 Holgate. At all relevant times both individuals were members of Local 600, and both
13 performed work for other employers in the motion picture industry.

14       14.    Pear Point paid Jason LeBlanc and Douglas Holgate in cash for the days
15 that they worked. Pear Point did not keep payroll or other written records of their
16 employment, except for the contribution report forms that Pear Point submitted to the
17 Plans. Pear Point timely made contributions for all work performed by the two
18 individuals, and included them in its monthly contribution report forms.

19       15.    In January 2009, the Plans conducted an audit of Pear Point's books and
20 records. The audit covered the period beginning June 12, 2005 and ending June 30,
21 2009 ("the Audit Period").

22       16.    In July 2009, the Plans' Audit and Collections Department advised Mr.
23 LeBlanc that because Pear Point had no written payroll records showing employment
24 by Jason LeBlanc and Douglas Holgate, such employment would be disregarded for
25 Plan purposes. The Department further advised that because employment by these
26 individuals would be disregarded, Pear Point would be deemed a loan-out company
27 for all times during the Audit Period.

28

COMPLAINT

17.   The Audit and Collections Department further advised Plaintiffs that because Pear Point was deemed a loan-out company, it was prohibited from making contributions to the Plans on behalf of Mr. LeBlanc. The Department also informed Plaintiffs that Mr. LeBlanc's eligibility for benefits from the Health Plan was denied retroactive to the beginning of the Audit Period, and that all pension credits under the Pension Plan would be denied for work performed by Mr. LeBlanc during the Audit Period.

18.   Accordingly, the Audit and Collections Department stated that Plaintiffs owed the Health Plan the sum of $113,398.98, which consisted of alleged overpaid health benefits, administrative charges, and audit costs.

19.   Further, the Department stated that pension credits for 11,592 hours reported by Pear Point for Mr. LeBlanc during the Audit Period would be disregarded in determining Mr. LeBlanc's pension benefits under the Pension Plan.

20.   Following the receipt of the foregoing determinations from the Audit and Collections Department, Mr. LeBlanc obtained affidavits from Douglas Holgate and Jason LeBlanc attesting that they did in fact perform work for Pear Point during the Audit Period.  These affidavits specified the dates of employment, the projects for which services were performed, the hours worked, and the amounts paid to them. Each affidavit also stated that the employee requested Pear Point to pay him in cash. Plaintiffs submitted these affidavits to the Department.

21.   Plaintiffs also obtained affidavits from the producers who had retained Pear Point on the days that Jason LeBlanc or Douglas Holgate worked for Pear Point. These affidavits attested that in each case the producer had retained Pear Point itself, and that Pear Point had employed both Mr. LeBlanc and an assistant on the days that Pear Point had reported work by either of the two individuals.  These affidavits were also submitted by Plaintiffs to the Department.

COMPLAINT

5

22.     In January 2010, legal counsel for the Plans advised Plaintiffs that the Plans' Audit and Collections Committee had considered the affidavits and other material submitted by Plaintiffs, and that such materials were insufficient to establish that either Jason LeBlanc or Douglas Holgate were in fact employed by Pear Point during the Audit Period.

23.     Thereafter Plaintiffs obtained legal counsel, who requested a reconsideration of the Audit Committee's decision.

24.     In July 2010, the Plans rejected the request, and afforded Plaintiffs an opportunity to submit a formal appeal to the Plans' Benefit Appeals Committee.

25.     On January 6, 2011, Plaintiffs submitted their Appeal to the Appeals Committee. A true and correct copy of that Appeal is attached hereto as Exhibit "A."

26.     In March 2011, the Appeals Committee, through the Plans' legal counsel, requested additional information regarding the employment of Jason LeBlanc and Douglas Holgate. Plaintiffs furnished such additional information on April 11, 2011. A true and correct copy of the additional submission is attached hereto as Exhibit "B."

27.     On May 10, 2011, the Appeals Committee, through its legal counsel, advised Plaintiffs' counsel that the Appeal was denied in its entirety. A true and correct copy of the denial is attached hereto as Exhibit "C."

28.     Plaintiffs have exhausted all administrative remedies and proceedings provided by the Plans.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief)

29.     A true and present controversy has arisen between Plaintiffs and Defendants. Defendants contend that Pear Point was a loan-out company at all times during the audit period, and that because of such status Pear Point was prohibited

1  from contributing to the Plans, and Mr. LeBlanc was ineligible to receive benefits
2  from the Plans. Defendants contend that Plaintiffs owe to the Health Plan all benefits
3  paid by it to or on behalf of Mr. LeBlanc and his dependents based on contributions
4  .made by Pear Point to the Health Plan, and have threatened to take legal action
5  against Plaintiffs to collect such amounts. Defendants also contend that Mr. LeBlanc
6  is not entitled to any pension benefits from the Pension Plan based upon Pear Point's
7  contributions to that Plan.

8      30.   Conversely, Plaintiffs contend that Jason LeBlanc and Douglas Holgate
9  were in fact employees of Pear Point on the days reported by Pear Point, that there is
10  no requirement in any Plan document that compels Pear Point to maintain payroll
11  records, and that the evidence submitted overwhelmingly supports the fact that these
12  two individuals were Pear Point employees. Pear Point was therefore not a loan-out
13  company during the Audit Period. In the alternative, Plaintiffs contend that under the
14  Plan rules existing during the Audit Period, Pear Point could make contributions for
15  Mr. LeBlanc, and Mr. LeBlanc could participate in the Plans, even if Pear Point was
16  a loan-out company.

17      31.   Accordingly, Pear Point was entitled to make contributions for  Mr.
18  LeBlanc under his collective bargaining agreement with Local 600, and Mr. LeBlanc
19  was eligible for benefits under the Health Plan and entitled to pension credits from the
20  Pension Plan based on work he did for Pear Point.  Plaintiffs therefore have no
21  obligation to pay the amount to the Health Plan, and Mr. LeBlanc is entitled to
22  restoration of all pension credits denied by the Pension Plan.

23      32.   Pursuant  to  ERISA  Section  502(a)(3)(B),  29  U.S.C.  Section
24  1132(a)(3)(B). Plaintiffs are entitled to a declaration from this Court stating that at all
25  times during the Audit Period, Pear Point was both required and permitted to make
26  contributions to the Plans, that Plaintiffs have no obligation to pay any amount to the
27  Plans, and that the Pension Plan must restore to Mr. LeBlanc all pension credits

28

COMPLAINT

7

1 previously cancelled by the Pension Plan.

2 ## SECOND CLAIM FOR RELIEF

3 ### (Enforcement of Plan Rights)

4        33.    Plaintiffs satisfied all written rules and requirements maintained by the
5 Plans and communicated to its participants and participating employers regarding
6 eligibility to contribute to and participate in the Plans.  Pear Point timely paid all
7 contributions required under its collective bargaining agreement with Local 600 to
8 both Plans.  Mr. LeBlanc therefore had the right to receive all benefits paid by the
9 Health Plan to him or on his behalf based on work he performed for Pear Point, and
10 to receive all pension credits from the Pension Plan based on such service.

11        34.    This Court has the authority to enforce such rights under ERISA Section
12 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B).

13 ## THIRD CLAIM FOR RELIEF

14 ### (Breach of Fiduciary Duty)

15        35.    The members of the Appeals Committee are and were at all times
16 fiduciaries of the Plans, and as such term is defined in ERISA Section 3(17), 29 U.S.C.
17 1002(17). In reviewing and resolving Plaintiffs' Appeal the Appeals Committee owed
18 a duty to Mr. LeBlanc to act in a fair, reasonable, and nonarbitrary manner, and in
19 particular to carefully consider the affidavits and supporting documents submitted by
20 Plaintiffs in their Appeal.

21        36.    From the May 10, 2011 denial Plaintiffs cannot tell whether the Appeals
22 Committee denied the Appeal because it believed that the affidavits and supporting
23 documents were untrustworthy, incomplete, defective, or otherwise inadequate, or
24 whether the denial was based on the Committee's belief that under the Plan rules an
25 employer can only establish the employment of its employees through written payroll
26 records, and through no other source.

27        37.    Either belief is arbitrary and capricious, and constitutes an abuse of the

28

---

1 Committee members' discretion.

2     38.    The Committee members therefore breached the fiduciary duties they
3 owed to Mr. LeBlanc when they denied the Appeal. This Court has the authority to
4 remedy such breach under ERISA Section 502(a)(3), 29 U.S.C. Section 1132(a)(3).

5                          **FOURTH CLAIM FOR RELIEF**

6                    **(Clarification of Rights to Pension Benefits)**

7     39.    On or about December 10, 2010 Mr. LeBlanc submitted an application
8 for retirement benefits to the Pension Plan. Benefits commenced on March 1, 2011.

9     40.    The monthly benefit for any retired participant in the Pension Plan is
10 determined by multiplying the total reported hours for all years of service by the
11 applicable benefit rates in effect when the participant retired. Plaintiffs are informed
12 and believe that the applicable benefit rates are determined by collective bargaining
13 in the motion picture industry.

14     41.    The Pension Plan maintains a website which includes a copy of its
15 Summary Plan Description ("SPD"). The SPD shows that as of 2005 the applicable
16 benefit rate was $.0295 for the first ten years of service, and $.0393 for all years
17 thereafter. No information is given for the current benefit rates. Instead, the SPD says
18 that new applicable benefit rates are "to be determined in early 2006."

19     42.    In April 2010, Mr. LeBlanc received a benefit statement ("Statement")
20 from the Pension Plan regarding his accrued benefits. The Statement did not show the
21 applicable benefit rates. However, it did show the total reportable hours for Mr.
22 LeBlanc, as well as his projected monthly benefit payment. Dividing the latter by the
23 former yields an applicable benefit rate of approximately $.0440. From the SPD on
24 the Plan's website, Plaintiffs understand that this is a blend of two or more applicable
25 benefit rates in effect on the date the Statement was issued. However, Plaintiffs
26 cannot determine from the Statement the particular applicable benefit rate that applied
27 to the hours Pear Point reported for Mr. LeBlanc during the Audit Period.

28

COMPLAINT

9

1    43.    On August 2, 2010, and on several occasions thereafter, Plaintiffs
2  (through their legal counsel) asked for the applicable benefit rate that applied during
3  the Audit Period. To date the Pension Plan has failed to provide this information.

4    44.    The Statement shows that 5,096 reported hours were deleted for the 2007
5  Plan year. However, as described about, the Audit and Collections Department told
6  Mr. LeBlanc that 11,592 hours would be cancelled. It is unclear from the Statement
7  whether it reflects the deletion of all hours reported by Pear Point for Mr. LeBlanc in
8  Plan years other than 2007, or whether these hours are yet to be deleted.

9    45.    Pursuant to ERISA Section 502(a)(1), 29 U.S.C. Section 1132(a)(1), Mr.
10  LeBlanc is entitled to a clarification of his rights to benefits from the Pension Plan,
11  and in particular to know the applicable benefit rate for hours reported by Pear Point
12  during the Audit Period.

13                          **FIFTH CLAIM FOR RELIEF**
14                              **(Civil Penalty)**

15    46.    Under ERISA Section 502(c)(1), 29 U.S.C. Section 1132(c)(1), the
16  Pension Plan was required to furnish Mr. LeBlanc with an updated SPD or other
17  information showing the applicable benefit rate in effect during the Audit Period
18  within thirty (30) days after the request was made by Mr. LeBlanc. The Pension Plan
19  has not offered, and cannot offer, any reasonable excuse for its failure to provide such
20  information. By reason of the Pension Plan's failure, Mr. LeBlanc has been unable,
21  and continues to be unable, to determine the financial effect of the Pension Plan's
22  calculation of the hours reported by Pear Point during the Audit Period.

23    47.    The foregoing section of ERISA permits this Court to award Mr. LeBlanc
24  a civil penalty of up to $100.00 for each day that the Pension Plan has failed to provide
25  the requested information. Mr. LeBlanc requests this Court to award him a civil
26  penalty in an amount the Court believes is just and proper.

27
28

COMPLAINT
                                    10

1                                     **PRAYER**

2       Wherefore, Plaintiffs pray for judgment against Defendants as follows:

3       1.    For a declaration stating that Plaintiffs do not owe any amount to the

4 Health Plan;

5       2.    For an order requiring the Pension Plan to reinstate all hours reported by

6 Pear Point on behalf of Mr. LeBlanc that were cancelled by the Pension Plan;

7       3.    For an order clarifying the amount of pension benefits that are due to Mr.

8 LeBlanc;

9       4.    For civil penalties under ERISA Section 502(c)(1), 29 U.S.C. Section

10 1132(c)(1), as determined by this Court;

11       5.    For Plaintiffs' reasonable attorneys' fees and costs incurred in this action;

12 and

13       6.    For such other further relief as the Court deems just and proper.

14

15 DATED:  May 16, 2011           ST. JOHN, WALLACE, BRENNAN

16                                   & FOLAN LLP

17

18                               By:_____

19                                   John R. St. John
                                  Attorneys for Plaintiffs, James LeBlanc and
                                  Pear Point Project, LLC

20

21 ...\0317...\Complaint.wpd

22

23

24

25

26

27

28

COMPLAINT

EXHIBIT "A"

# ST. JOHN WALLACE BRENNAN & FOLAN LLP

LAW OFFICES

21515 Hawthorne Boulevard
Suite 1120
Torrance, CA 90503-6504

Tel (310) 792-1075
Fax (310) 792-0635

Writer's E-Mail:
jrstjohn@swbf.net

January 6, 2011

0317

**By Regular U.S. Mail**

Benefits/Appeals Committee
Motion Picture Industry Health Plan
P.O. Box 1999
Studio City, California 91614-0999

> Re:   **Pear Point Project, LLC and**
> **James LeBlanc**

Dear Committee Members:

This office is counsel to Pear Point Project, LLC ("Pear Point") and James LeBlanc ("Mr. LeBlanc"). Pear Point and Mr. LeBlanc (collectively "Appellants") hereby appeal the decision of the Audit and Collections Committee ("Audit Committee") as set forth in the July 13, 2010 letter from Kathy Halford of Wohlner Kaplon Phillips Young & Cutler.

On this appeal the Appellants raise the following two arguments:

(a)   For the relevant time period (see discussion below regarding time period) Pear Point was not a loan-out company. Accordingly, Pear Point properly made contributions for Mr. LeBlanc, and Mr. LeBlanc was eligible for benefits during the relevant period. In particular, Pear Point was not a loan-out company because Pear Point employed employees other than Mr. LeBlanc in 2006, 2007, and 2008.

(b)   Even if Pear Point was a loan-out company during the relevant period, it was permitted to make contributions for Mr. LeBlanc. In particular, during this period the Health Plan prohibited contributions by a loan-out company only when the loan-out company was performing services for a producer who was required by its collective bargaining agreement to make contributions to the Plan for the Controlling Employee of the loan-out company. For the relevant period, Pear Point provided services for nonunion producers who of course had no obligation to contribute to the Plan.

Each argument is discussed in detail below.

EX. A-1

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 2

## I.   Background /[1]

Prior to 2005 Mr. LeBlanc worked in the motion picture industry as a director of photography. He was employed by various union production companies who made contributions to the Health and Pension Plans on his behalf. For most periods, he worked sufficient hours to maintain his Health Plan eligibility.

In 2004 opportunities for employment with union producers diminished, and Mr. LeBlanc was not able to work enough hours to maintain his Health Plan eligibility. Accordingly, he elected COBRA continuation coverage beginning in early 2005.

In mid-2005 Mr. LeBlanc had a conversation with David Behn at IATSE Local 600 ("Local 600" or "the Union"). Mr. LeBlanc knew that there were job opportunities in the motion picture industry with nonunion producers, and so informed Mr. Behn. Mr. Behn told Mr. LeBlanc that if he started his own company, and if his own company signed a collective bargaining agreement with Local 600, his company could do business for nonunion producers and make contributions to the Plans on behalf of Mr. LeBlanc.

Mr. Behn and Mr. LeBlanc also discussed the possibility that Mr. LeBlanc's new company might need the assistance of others in performing services for nonunion producers. Mr. LeBlanc agreed that if this occurred those employees would be covered by his company's collective bargaining agreement.

Relying on this, Mr. LeBlanc formed Pear Point in June 2005, and promptly signed a collective bargaining agreement with Local 600 (in particular, the form of agreement commonly known as the "West Coast Agreement"). Pear Point first began providing services for nonunion producers in June, 2005. Thereafter, until July 9, 2009, it provided services for many different production companies. /[2]

---

[1] The information provided below is supported by exhibits attached to this Appeal. Many of these exhibits have been previously produced, but for the Committee's convenience they are resubmitted here.

[2] To our knowledge the Plans do not contend that Pear Point was not a bona fide legal entity, or that it did not perform significant services in the motion picture industry, or that it did not timely make the contributions for Mr. LeBlanc that are specified in Exhibit A, Article II, Section 4.A of the Health Plan document. If any such claim is asserted by the Plans, or if the Plans assert any other grounds for denying eligibility other than those set forth in the July 13, 2010 letter from Ms. Halford, then obviously they must be asserted, and Appellants must be given the opportunity to respond. See, Abatie vs. Alta Health & Life Ins. Co., 421 F.3d 1053 (9th Cir. 2005).)

A-2

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 3

In February, 2006, Mr. Behn from Local 600 told Mr. LeBlanc that the Union was "getting pressure" from the Plans to ensure that loan-out companies like Pear Point employed other individuals "for at least a couple of days a year." Accordingly, Mr. LeBlanc began seeking work for Pear Point that would require the assistance of others.

Pear Point in fact first employed another individual, Jason LeBlanc, on September 27, 2006. [3] For the period 2006-2008 Pear Point employed the following individuals on the following days:

Jason LeBlanc     -     September 27, 2006, October 23, 2007, November 3, 2007, December 17, 2008

Douglas Holgate    -    October 21, 2008

It is well established in this matter that Pear Point paid these employees in cash. This is the basis on which the Audit Committee determined that Pear Point did not have any bona fide employees other than Mr. LeBlanc, and hence was a loan-out company.

Although Pear Point did timely make Health Plan and Pension Plan contributions for the work performed by Douglas Holgate and Jason LeBlanc, it kept no payroll or other records of their employment, except for the Plan contribution reporting forms. The fact that the written reports and contributions were submitted when the services were rendered is an important element in this appeal, which will be argued below.

In January, 2009 the Plans conducted an audit of Pear Point's books and records for the period June 12, 2005 through June 30, 2009. On July 9, 2009, Chuck Gordon, the manager of the Plans' Audit and Collections Department, sent Mr. LeBlanc a letter stating in pertinent part:

"During the audit, the Plans discovered that the employer was not able to satisfy the requirements of a controlling employee-shareholder company in order to participate in the Plans. Controlling employees are only eligible to participate in the Plans if they meet the criteria set forth in Article II, Section 4, of Exhibit A."

---

[3] Jason LeBlanc is Mr. LeBlanc's brother. The Appeals Committee may rightly be dubious about whether the declared employment of a relative is bona fide. Unscrupulous employers may "employ" relatives who do not have the necessary skills, nor even perform significant services. However, Jason LeBlanc is an experienced First Assistant Cameraman and a member of Local 600 who has long worked in the industry.

A-3

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 4

Mr. Gordon's statement was supported by the Auditor's Report Outline for the Pear Point audit, which stated that:

"Reported hours were not substantiated by documentation. The Company did not supply copies of cancelled checks or tax documents to a state or the IRS to verify that individuals reported were employees of the corporation [sic] performing covered labor."

Accordingly, Mr. Gordon's letter advised Mr. LeBlanc:

"Because it appears that Pear Point Pro [sic], LLC was not a qualified employer during the period of time for which these reports were made, the 11,592.0 hours which the employer made contributions will be deleted from your accruals with all Plans, and any benefits that you receive based on these hours may be suspended." /[4]

Mr. Gordon sent a second letter, also dated July 9, 2009, demanding that Appellants pay the sum of $113,398.98 to the Plans. /[5] Following receipt of these letters from Mr. Gordon, Mr. LeBlanc (with the assistance of Local 600) obtained affidavits from Douglas Holgate and Jason LeBlanc attesting that they did in fact perform work for Pear Point. These affidavits specified the dates of employment, the projects for which services were performed, the hours worked, and the amount paid to them. Each affidavit also stated that the employee requested Pear Point to pay him in cash.

Mr. LeBlanc also obtained affidavits from the producers themselves, attesting that in each case the producer had retained Pear Point, and that Pear Point had employed both Mr. LeBlanc and an assistant.

On January 11, 2010 Ms. Halford sent Mr. LeBlanc a letter advising him that:

---

[4]The Auditor's Report Outline states that the over-reported hours were 11,624.0, not 11,592.0. This discrepancy needs to be clarified.

[5]This amount consisted of allegedly overpaid health benefits, administrative charges, and audit costs. Presumably the reference to "the Plans" means that the administrative and audit costs are shared between the Health and Pension Plan. To Appellants' knowledge, no claim is being made by the Pension Plan other than for its proportionate share of administrative and audit costs. If this is incorrect, please let us know.

A-4

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 5

> "The Plans have determined that the documentation you provided regarding hours reported to the Plans on behalf of Jason LeBlanc and Douglas Holgate was insufficient to establish that either was employed by Pear Point, LLC doing the audit period. As noted in the Plans' earlier correspondence, these two individuals were reported by Pear Point for minimal hours which hours could not be verified with substantive payroll and/or tax documentation. Therefore, the conclusion that Pear Point employed no other covered employees other than you, the Controlling Employee will stand." /[6]

The foregoing correspondence from the Plans constitutes the only information given to Appellants regarding the basis for the Audit Committee's decision.  From this we assume that if Pear Point had paid Douglas Holgate and Jason LeBlanc properly (meaning through a payroll check with required tax deductions and reporting) then the Audit Committee would not have considered Pear Point to be a loan-out company, and would not have denied the "accruals" for either Mr. LeBlanc or the two other employees. Again, if this is not the case, and if there is some other basis on which the Plans believe they may deny the accruals that derive from the contributions made by Pear Point for Mr. LeBlanc, then Appellants need to be expressly advised in detail so that they may respond accordingly. Abatie, supra.

## II.   Douglas Holgate and Jason LeBlanc Were In Fact Employees of Pear Point

There is no question that Pear Point should have paid Douglas Holgate and Jason LeBlanc through payroll checks with the required state and federal payroll tax reductions and income tax withholding.  Payments in cash violated both state and federal tax laws, as well as the California Labor Code.

However, whether Pear Point's actions did or did not comply with federal and state laws is not the issue here.  There are only two questions relevant in this matter:

(a)   Did Pear Point violate the Health Plan's plan documents or Trust Agreement by failing to keep written payroll records?

---

[6]Ms. Halford's letter did not explain why the documentation was insufficient.  However, there has been no challenge to the form or sufficiency of the affidavits themselves.  While the affidavits were prepared without the benefit of legal counsel, they do in fact comply with California Code of Civil Procedure Section 2003. Thereafter Mr. LeBlanc retained legal counsel who wrote to Ms. Halford on April 19, 2010 requesting reconsideration.  This was denied, as set forth in Ms. Halford's July 13, 2010 letter.

A.5

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 6

    (b)    If not, has Pear Point adequately established that Jason LeBlanc and Douglas Holgate were employees of Pear Point? (Or, more precisely, based upon the evidence submitted can the Committee reasonably conclude that the two individuals *were not* employees of Pear Point?)

    As to the first question, nothing in the Health Plan's plan document or Trust Agreement requires an employer to keep payroll records or any other records on wage payments to its employees. Moreover, nothing in these documents requires an employer to make payroll tax deductions or transmittals to the taxing authorities, or prohibits an employer from paying its employees in cash. The same is true for any collective bargaining agreement to which Pear Point was a party. The documents simply do not speak to these issues.

    The only record reporting requirements imposed on employers is set forth in Article V, Section 6(a) of the Trust Agreement, which states in pertinent part:

> "The Employers shall make such reports and statements to the Directors with respect to the amount and calculation of any and all contributions as the Directors may deem necessary or desirable."

    Pear Point in fact complied with this requirement. To our knowledge, neither the Audit and Collections Department nor the Audit Committee contends that Pear Point did not make timely contributions and required contribution reports for Mr. LeBlanc, Douglas Holgate, or Jason LeBlanc. The essential point here is that Pear Point's failure to keep written records of its wage payments to Jason LeBlanc and to Douglas Holgate did not violate the Health Plan Trust Agreement or any other written Plan document. /[7]

    Absent any such violation, the Appeals Committee must determine, on the evidence presented to it, whether the two individuals were in fact employees of Pear Point. Obviously, it would be an abuse of discretion if the Committee simply determined that because these individuals were paid in cash they could not as a matter of law or principle be considered employees. /[8]

---

[7] The Plans do provide new employers with a Contribution Requirement Information Sheet that includes a section entitled "Adequate Records." However, this section applies when existing records actually show or suggest that work *has been* performed under a collective bargaining agreement, and gives the Directors the discretion to determine the amount of work so performed. Nothing in the Contribution Requirement Information Sheet requires an employer to maintain written payroll records.

[8] As the Committee members are no doubt well aware, if either individual had asserted some employment-based claim against Pear Point (for example, a demand for overtime pay or a discrimination claim), Pear Point could not successfully assert that the individual was not a Pear Point employee simply because he had asked to be paid in cash.

A-6

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 7

Appellants concede that the failure to keep records can create a presumption that the individuals were not employees, but that presumption is rebuttable. In other words, it is incumbent upon Appellants to rebut this presumption through alternative evidence. On this point we wish to remind the Committee that it is bound by Section 503 of the Employee Retirement Income Security Act ("ERISA ") and the regulations thereunder to give Appellants a "full and fair review" of their Appeal. In particular, the Committee must:

> "Provide claimants with the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits [ *and* ] provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."   29 C.F.R. 2560.503-1(h)(2)(ii) and (iv).
> Further, the Committee must:

> "Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual."   29 C.F.R. Section 2560.503-1(h)(3)(ii).

The foregoing clearly shows that the Committee (i) must consider all of the affidavits, declarations, and other documents submitted with this appeal, and (ii) must make a *de novo* decision based on these documents, and cannot simply defer to the prior determinations of the Audit Committee or the Audit and Collections Department. /[9]

Neither ERISA nor any regulations or case law thereunder directly address the use of affidavits or declarations for proof of facts in administrative appeals proceedings required under Section 503. In general, however, "a declaration is sufficient proof to support a finding of fact." Thon v. Thompson (1994) 29 Cal.App.4th 1546.

---

[9]/The foregoing regulations suggest that if any member of the Appeals Committee is also a member of the Audit Committee, then that individual should not participate in rendering any decision on the appeal herein.

A-7

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 8

It is generally true that declarations and affidavits are not a substitute for direct oral testimony. /[10] However, the Health Plan's Claims Appeals Procedures expressly prohibit personal appearances before the Committee. Accordingly, the only way Appellants can submit facts to the Committee in support of their appeal is through the affidavits and declarations.

With this Appeal, Appellants are submitting the following affidavits and declarations from the following individuals:

    (a)    James LeBlanc;
    (b)    Jason LeBlanc;
    (c)    Douglas Holgate;
    (d)    David Emery of Lost Continent Films;
    (e)    Jim Edwards of Barking Weasel Productions;
    (f)    Bruce Somers of Sincbox Production Company.

The affidavits from the three producers are particularly important. They verify the statements made by Mr. LeBlanc, Jason LeBlanc and Douglas Holgate. In particular, they state that the two individuals did in fact perform services on the dates stated. /[11]

Obviously, the producers are not interested parties, and hence their testimony ought to be entitled to great weight.

The only evidence contrary to the statements in the affidavits and declarations is the mere absence of payroll records. In particular, the Committee has no affirmative evidence that contradicts the evidence submitted by Appellants. Accordingly, there is no rational basis for the Committee to refuse to accept the truth of the facts in the affidavits and declarations.

As stated above, the July 13, 2010 letter from Ms. Halford does not say why the affidavits and declarations were insufficient to establish that Douglas Holgate and Jason LeBlanc were in fact employees of Pear Point. However, Ms. Halford did say:

---

[10]/Appellants have submitted both affidavits and declarations in support of their appeal. Since the declarations comply with California Code of Civil Procedure Section 2015.5 they are functionally equivalent to affidavits.

[11]/We understand that the Plans have independently determined that Lost Continent, Sincbox Production Company, and Barking Weasel Productions never themselves directly employed Jason LeBlanc or Douglas Holgate, nor made contributions to the Plans on their behalf.

A-8

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 9

> "As you can well understand, acceptance of any alternative standard would leave the
> Plans open to manipulation of hours and abuse by persons seeking to obtain health
> coverage and other Plan benefits."

There is no question that the Directors of both Plans have an interest and a duty to prevent
fraudulent participation in the Plans. However, the Committee must evaluate Appellants' case on
its own merits. Appellants fail to see how the acceptance of the "alternative standard" *in this case*
(the affidavits and declarations) would leave the Plans "open to manipulation." It is extremely
unlikely that Mr. Holgate or the producers would voluntarily commit perjury by submitting false
affidavits.

Moreover, Appellants fail to see how the cash wage payments to the two individuals and the
resulting lack of supporting payroll records would suggest some fraudulent scheme on the part of
Appellants. Obviously, if they had intended any such scheme (by reporting the two individuals as
employees when in fact they never performed services for Pear Point), Appellants could easily have
issued "paychecks" to them and kept bogus underlying records. Indeed, an intentionally fraudulent
scheme would have involved exactly this precaution. The "wages" that would have been paid
through the "paychecks" would have been a small price to pay for removing Pear Point from its
status as a loan-out company.

Accordingly, the presence or absence of payroll records does not in itself reveal any possible
fraud against the Plan. Indeed, if the Committee determined that the two individuals were never
employees of Pear Point, it would have to conclude that all of the affiants lied in their affidavits.

If Appellants had never made contributions for Jason Le Blanc and Douglas Holgate, or had
made the contributions at some time well after the dates the two individuals rendered services, the
Committee might well be suspicious that the individuals were not in fact *bona fide* employees of
Pear Point. However, in this case Pear Point made the contributions to the Plans at the appropriate
times required under the applicable Plan documents. This certainly supports the fact that Pear Point
actually employed the two individuals on the dates set forth in the affidavits.

Clearly, if Appellants had known that keeping payroll records for noncontrolling employees
was required as a matter of policy in order for Pear Point to avoid loan-out status, they would have
obviously done so here. As said above, this would have been easy to do. However, Appellants were
never aware of any such policy until the Plans conducted the audit.

A-9

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 10

Again, the affidavits and declarations submitted by Appellants clearly show that Jason LeBlanc and Douglas Holgate were in fact employees of Pear Point, and hence Pear Point should not be deemed a loan-out company for the relevant time period. Rejection of the affidavits and declarations on some general theory that acceptance of them would "lead the Plans open to manipulation" makes no sense in this case, and would deny Appellants their right to the full and fair review required by ERISA.

### III.  Even if Pear Point Was a Loan-Out Company It Could Still Properly Make Contributions to the Plans for Mr. LeBlanc

A loan-out company is a particular type of Controlled Employer, as that term is defined in Article II, Section 4 of Exhibit A to the Plan document. /[12] There is no question here that at all times Pear Point was a Controlled Employer, and that Mr. LeBlanc was its Controlling Employee.

Subsection A of Section 4 specifies (with certain exceptions not relevant here) the Controlled Employer's contribution obligation for the Controlling Employee:

"Contributions shall be made for such Employee for fifty-six (56) hours per week, and for not less than forty-eight (48) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work."

Again, Appellants understand that the Directors do not disagree that Pear Point complied with the foregoing contribution requirement.

Subsection B of Article 4 provides an exception to subsection A when the Controlled Employer is a loan-out company. Subsection B states in its entirety:

"Effective with the pay period which includes January 1, 1991, this Section 4 shall not apply to an employee employed by a 'loan out company' if the Collective Bargaining Agreement under which that Employee works requires that the borrowing Employer make contributions directly to the Health Plan on behalf of the Employee for all hours worked or guaranteed by the Employee. The term 'loan out company' is defined as a company controlled by the loaned out Employee, who is the only employee of the loan out company."

[12]We understand that Article II, Section 4 was substantially amended in February 2009 to add a 1,500 aggregate hour requirement for noncontrolling employees in order to avoid loan-out status. However, we assume that this version does not apply here, and that the terms of Article II, Section 4 in effect prior to February 2009 will control. The citations in this appeal are to that version, which is labeled "Rev. 7/08."

A-10

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 12

bargaining agreement makes no such provision, or if the producer has no collective bargaining agreement at all, then the loan-out company must make the contributions, and those contributions must be in accordance with Article II , Section 4.A of Exhibit A to the Plan document.

To put it another way, nothing in Article II, Section 4.B of Exhibit A to the Plan document, nor Article XXXIV(d) of the Basic Agreement, reflects any intent to exclude Controlling Employees of loan-out companies from participating in either the Health Plan or the Pension Plan. Both documents merely identify who has the obligation to make the underlying contributions. If there had been an intent to exclude Controlling Employees of loan-out companies from participation unless the producer made the contributions, the eligibility provisions of the Plan documents would surely have said "Controlling Employees of loan-out companies may participate in the Plan only if the Producer is required to make contributions to the Plan," or something similar. There is no such language in either the Health Plan or the Pension Plan during the relevant time period. /[14]

Moreover, Appellants' interpretation of Article II, Section 4 is supported by the August 2010 amendment to that Section. Section 4.B now states that "[t]his Section 4 shall not apply to an Employee employed by a 'loan-out company'," and a new Section 4.C.2 states:

"The sole Employee of a loan-out company shall be deemed an Employee unless contributions are payable directly to the Plan by the Producer borrowing the services of the Employee from the loan-out company."

Section 4 as it currently reads is obviously far different from the version of Section 4 in effect during the relevant time period (the July 2008 version). Under the current version Mr. LeBlanc could not have participated in the Plan if Pear Point was deemed to be loan-out company. Pear Point could not have made the Plan contributions for Mr. LeBlanc even if the borrowing Producers had no contribution obligation. Yet the current version does not apply here.

The August 2010 amendment surely demonstrates a change in intent, otherwise there would have been no need to revise Section 4 in the first place. If the intent now is to prohibit a loan-out company from ever making contributions directly for the Controlling Employee, it follows that this intent *is* different than the intent expressed in the July 2008 version of Section 4. Hence the language in Section 4.B of the July 2008 version must mean that loan-out companies are prohibited from making contributions on behalf of the Controlling Employee only when the borrowing Producer is required to make those contributions.

---

[14]/As noted in the paragraph below, language like this was in fact added to the Plan in August of this year.

A-12

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 13

Putting it another way, it would make no sense to say that the July 2008 version and the August 2010 version of Article II, Section 4 say exactly the same thing with respect to loan-out companies. If that had been the case there would have been no need for the extensive revisions.

Accordingly, especially in the light of the change made in August 2010, the only proper interpretation of the July 2008 version of Article II, Section 4.B is that, if Pear Point was in fact a loan-out company, it nevertheless could have made contributions for Mr. LeBlanc so long as the borrowing producers had no contribution obligation.

To Appellants' knowledge, no producer has ever made Plan contributions, or has been required to make such contributions, for Mr. LeBlanc at any time after he began working for Pear Point. Accordingly, Article II, Section 4.B would not bar Pear Point from contributing to the Plans, and Pear Point would instead be required to comply with the contribution requirements in Section 4.A. As noted, Pear Point in fact complied with those requirements.

Therefore, even though the affidavits and declarations submitted clearly show that Pear Point was not a loan-out company during the relevant period, the above provisions in the Plan document and collective bargaining agreements clearly show that Pear Point could properly make (and indeed was required to make) contributions to the Plans on behalf of Mr. LeBlanc.

## IV.    Relevant Time Period

As noted, the audit covered the period June 12, 2005 through June 30, 2009 ("Audit Period"). Pear Point's most recent collective bargaining agreement with Local 600 covered the period August 1, 2006 through July 31, 2009 ("CBA Period"). Pear Point employed others than Mr. LeBlanc in the calendar years 2006 through 2008 ("Employment Period").

The payment demand from the Audit and Collections Department covers the entire Audit Period. In particular, Appellants were advised that all hours reported by Pear Point for Mr. LeBlanc during this period were disregarded, and Mr. LeBlanc's Health Plan eligibility was retroactively withdrawn. No communication from the Health Plan has specified the actual periods for which eligibility was withdrawn, nor the amounts of benefits that were paid for services received by Mr. LeBlanc or his eligible dependents during these periods. /[15]

---

[15]/Appellants understand that Health Plan eligibility is based on a complex system of rolling six-month Qualifying Periods followed by the corresponding rolling six-month Eligibility Periods. If an employee works at least 300 hours in any Qualifying Period he or she will be eligible for the corresponding Eligibility Period, which begins roughly three months after the end of the corresponding Qualifying Period.

A-13

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 14

If the Committee determines that Douglas Holgate and Jason LeBlanc were in fact employees of Pear Point, and hence Pear Point was not a loan-out company, it is not clear what period of time this determination would cover. An argument could be made that it would cover the entire Audit Period. However, an argument could also be made that the determination should apply only to the Employment Period, since Pear Point actually employed the two employees only during those years. Finally, an argument might also be made that the determination should apply only for the CBA Period, since only in that period did Pear Point have both a collective bargaining agreement with Local 600 and employees other than Mr. LeBlanc himself.

From the communications received from the Plan it would appear that the Health Plan contends that the relevant period to be used here is the Audit Period, and hence if the Committee determines that Jason LeBlanc and Douglas Holgate were indeed bona fide employees, then that determination will apply throughout the Audit Period. However, this needs to be clarified.

If some period other than the Audit Period is deemed to be the relevant time period, then the Plan Administrator would have to determine what Eligibility Periods fell within and without this period, and what benefits were paid for services received by Mr. LeBlanc and his dependents during the respective Eligibility Periods.

Of course, the determination of the relevant time period would be moot in either of the following situations:

(a)     if the benefit reimbursement demanded by the Health Plan would apply to services received in all Eligibility Periods covered by all three potential relevant time periods; or

(b)     if the Committee determines that Pear Point properly made contributions for Mr. LeBlanc even if it was a loan-out company, as argued under Section III above. All three potential time periods would be covered by that determination.

### V.     Pension Plan Accruals

Although this Appeal is directed to the Health Plan, Appellants understand that the Committee also serves as the Appeals Committee for the Pension Plan.

In April of this year Mr. LeBlanc received his 2009 Pension and Individual Account Plan Statement showing his accrued benefits under the Plans through the plan year ending December 26, 2009. The Statement shows that Mr. LeBlanc has, absent any hours reported by Pear Point, 23 Qualified Years and 25,234.70 Credited Hours. This yields a $1,110.22 monthly pension benefit at normal retirement.

A·14

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 15

If the 11,592 hours (or 11,624 hours, whichever is the correct number) that Pear Point requested is credited to Mr. LeBlanc, his monthly pension benefit will of course be substantially increased. [16]

The provisions in the Pension Plan's Trust Agreement regarding an employer's reporting requirements are identical to those in the Health Plan's Trust Agreement. Accordingly, Appellants' arguments with respect to the absence of any Plan rules on written wage reports or records applies to the Pension Plan as well as to the Health Plan.

We have requested but have not yet received a copy of the Pension Plan document, and hence do not know whether its provisions on loan-out companies, including amendments to those provisions, are the same as those for the Health Plan. We assume that they are, and hence all of the arguments made above would apply equally to Mr. LeBlanc's right to have his monthly pension benefit increased by including the Pear Point hours.

Should the Pension Plan document specify rules for loan-out companies that differ from those in the Health Plan document, Appellants reserve the right to supplement this Appeal following receipt of the Pension Plan document.


**VI.   Exhibits**

Accompanying this Appeal are the Exhibits that support the facts discussed above.


**VII.   Relief Requested**

Appellants request the following relief:

---

[16] It is unclear how much the increase would be. The Statement implies a benefit rate of $.0440 per hour per month ($1,110.22 divided by 25,234.70). However, the SPD currently available on the Pension Plan website shows a benefit rate of $.0393, although this runs only through 2006. We suspect the effective $.0440 rate for Mr. LeBlanc's current pension is a blend of two or more rates that were in effect throughout Mr. LeBlanc's work history. We have previously asked for the benefit rate (or benefit rates) that would be applicable to the Pear Point hours, but we have not yet received this information. It is therefore not possible to tell how much Mr. LeBlanc's monthly pension benefit would be increased if the Pear Point hours were included.

A-15

Benefits/Appeals Committee
Motion Picture Industry Health Plan
January 6, 2011
Page 16

    (a)    That the Health Plan cease any effort to recover any benefits paid to or on behalf of Mr. LeBlanc or his eligible dependents; and

    (b)    That Mr. LeBlanc be credited with the 11,592 (or 11,624, as the case may be) hours in pension accrual credits that Pear Point reported on his behalf.

In return, Mr. LeBlanc will waive any claim for civil penalties under ERISA Section 502(c).

If you need anything further from us, please let us know. We look forward to hearing from you.

Very truly yours,

John R. St. John
Of ST. JOHN, W^LLACE, BRENNAN & FOLAN LLP

JRS/sf
Attachments (Exhibits-Declarations)
...0317 LeBlanc\Appeal ltr

cc:    James LeBlanc

A-16

Re:  Pear Point Project, LLC and James LeBlanc

## **Exhibits to Appeal Letter**

Exhibit A   –   Affidavit of James LeBlanc dated August 24, 2009

Exhibit B   –   Supplemental Declaration of James LeBlanc dated
December 30, 2010

Exhibit C   –   Affidavit of Jason LeBlanc dated August 28, 2009

Exhibit D   –   Supplemental Declaration of Jason LeBlanc dated
December 28, 2010

Exhibit E   –   Affidavit of Doug Holgate dated August 31, 2009

Exhibit F   –   Affidavit of David Emery dated November 30, 2009

Exhibit G   –   Affidavit of Jim Edwards dated December 12, 2009

Exhibit H   –   Affidavit of Bruce Somers dated January 20, 2010

A-17

# EXHIBIT "A"

A·18

STATE OF WASHINGTON )
                        ) ss.
COUNTY OF SAN JUAN   )

The undersigned, being first duly sworn on oath deposes and says:

1. My name is James LeBlanc. I reside at 5027 Pear Point Road, Friday Harbor, Washington 98250. I am the managing member of Pear Point Project, LLC, a Washington Limited Liability Company.

2. This affidavit is given to swear to the above and following:

    A. As evidence that the work I performed as Director of Photography, I am providing a sampling of call sheets showing my name as such.

    B. Regarding the status of Pear Point Project, LLC, it was originally established on July 1, 2005. Annually thereafter, the Washington Secretary of State mails out an Annual Report requiring that I complete the form updating information as to the principal place of business, nature of business, phone number and the name and address of Members and to return that with the annual fee of $59.00. I completed that form and sent in the required payment in 2005 and 2006. In 2007, the form must have gotten lost in the mail and I did not receive it. I did not remember that an Annual Report was required and I carried on with business as usual. Because the Secretary of State didn't receive my annual report, the company was administratively dissolved on November 1, 2007. I did not receive any notice that this occurred. I did nothing myself to dissolve the company and was not aware of its dissolution until I was informed of it by you. At that point I contacted the lawyer who set up the LLC and she prepared the necessary paperwork to reinstate the company. The company is now once again in good standing with the Secretary of State and it shows on their website that it has been in good standing since 2005.

Dated: 8/24/2009

_James LeBlanc_

SUBSCRIBED AND SWORN TO this 24 day of August, 2009.

Notary Public
State of Washington
PEGGY L. HENSCIK
MY COMMISSION EXPIRES
JUNE 18, 2011

NOTARY PUBLIC in and for the State of Washington
residing at Friday Harbor
My commission expires: 6-18-2011

PEGGY L. HENSCIK

A-19

EX. A

# EXHIBIT "B"

A-20

Supplemental
## Declaration of James LeBlanc

I, James LeBlanc, declare:

1.      This will supplement the affidavit that I gave on August 24, 2009.

2.      I first began working in the Southern California motion picture industry in 1978. At that time I joined IATSE Local 600 and have been a member continuously since then. For most of my career I was a Director of Photography.

3.      Prior to 2005 all of my employment was with union producers, meaning producers who had contracts with IATSE unions. These producers made contributions to the Health Plan and Pension Plan on my behalf. I worked enough hours to maintain coverage under the Health Plan for me and my family.

4.      Beginning in 2004 there were fewer work opportunities for me in the industry with union producers. I was not able to work enough hours to maintain my eligibility, and had to go on COBRA in early 2005.

5.      I knew that I could get some work from non-union producers. Sometime around the middle of 2005, I had a conversation with David Behn at Local 600, and I told him about this opportunity. He said that if I started my own company, and that if my company signed a collective bargaining agreement with Local 600, my company could do work for non-union producers and make contributions to the Health Plan and to the Pension Plan for me.

6.      Accordingly, in June 2005, I formed Pear Point Project, LLC. I was and still am the sole member of Pear Point. Promptly after its formation I caused Pear Point to enter into a collective bargaining agreement with Local 600.

7.      In June 2005 I caused Pear Point to contract with various producers to perform photography services. At the beginning I was the only employee. All payments

A-21

Ex. B-1

for services I performed through Pear Point were paid by the producers directly to Pear Point.

8.     I was told by Mr. Behn that since I was an "owner employee," Pear Point had to pay contributions to the Plans for me as though I worked 56 hours per week for at least 48 weeks in a year, regardless how much I actually worked. I made sure that Pear Point complied with this requirement, and caused it to make the required contributions for me to the Plans and to submit the required contribution reports.

9.     In February 2006, Mr. Behn told me that he was getting pressure from the Plans to make sure that companies like Pear Point (meaning companies that had only one employee) employed at least one other individual for at least a couple of days a year.

10.     The first opportunity to use another employee on a project occurred in September 2006. I was able to use the services of my brother, Jason LeBlanc, in the Boxing Video project. Jason is an assistant cameraman who has worked in the industry since 2001.

11.     At various times in 2007 and 2008, I was able to have Pear Point hire Jason on various projects. In October 2008 I was also able to have Pear Point hire Douglas Holgate for the Corvette Jacks project.

12.     Both Jason and Douglas Holgate asked to be paid in cash. I complied. I didn't think it was wrong at the time, because in each case they worked for only one day. I realize now that it makes no difference whether an employee works for just one day or works continuously -- they have to receive a paycheck with the proper deductions in any case. But I didn't know this at the time.

13.     In January 2009 auditors from the Plans looked over Pear Point's books. In July 2009 I received the letter from Chuck Gordon telling me that all hours reported

A.22

Ex. B-2

for me by Pear Point were going to be disallowed, and that I would owe the Health Plan a lot of money for benefits it had paid for me and my family (my daughter has cerebral palsy and epilepsy, and thus has had a lot of health care expenses). After receiving that letter I stopped working entirely. I am now in the process of applying for my pension benefit from the Pension Plan.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this _30^th_ day of December, 2010, at Friday Harbor, Washington.

James LeBlanc

A.23

Ex. B-3

# EXHIBIT "C"

A-24

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF ISLAND     )

The undersigned, being first duly sworn on oath deposes and says:

1.  My name is Jason LeBlanc.  I reside at 1215 Leahy Drive, Coupeville, Washington 98239.

2.  This affidavit is given to verify that I worked for James S. LeBlanc, Pear Point Project, LLC, on the following dates, working on the stated commercials and documentaries:

    A.  On September 27, 2006, I worked for eight (8) hours on the Boxing Video.  Jim Edwards was the director.

    B.  On October 23, 2007, I worked for eight (8) hours on the television series Corvette Jacks.  Jim Edwards was the director.

    C.  On November 3, 2007, I worked for eight (8) hours on the Bhutan test.  David Emery was the director.

    D.  On February 17, 2008, I worked for eight (8) hours on the Red Camera test, Sincbox Co.  Bruce Somers was the director.

3.  On each of the four above named jobs I requested that I be paid in cash.  I was paid $220.50 cash each time.

4.  I did not perform any more covered work other than that reported above.

5.  I waive any claim for more benefits from MPI.

Dated: _August 28, 2012_

_____
Jason LeBlanc

SUBSCRIBED AND SWORN TO this _28_ day of _August_____, 2009.

NOTARY PUBLIC
STATE OF WASHINGTON
JANICE E. VAUGHAN
My Appointment Expires April 20, 2012

_____
NOTARY PUBLIC in and for the State of Washington
residing at _Coupeville_
My commission expires: _4·20·2012_

A-25

Ex. C

# EXHIBIT "D"

A-26

Supplemental
### Declaration of Jason LeBlanc

I, Jason LeBlanc, declare:

1.      This will supplement the affidavit that I gave on August 28, 2009.

2.      I have worked in the Southern California motion picture and television industry since 2001. I am a member of IATSE Local 600. I currently work as a First Assistant Cameraman.

3.      The following is a list of some of the work I have done in the industry in addition to my employment by Pear Point:

2001-Red Skies 2nd unit

2000-2001-Invisible Man, 2nd unit and insert unit TV series

2001-Every 15 Minutes-Video project

2001-Silent Sacrifice-video documentary

2002-BlackSash-insert unit, movie of the week

2002-Tremors-2nd unit, Mexican based TV series

2002-2003-Hunter-2nd Unit, insert unit TV series

2003-Invitaciones-spanish educational video

2003-A&E's History vs. Hollywood-

2003-Dell Computer TV spot

2004-2007-Veronica Mars TV series

2008-2010-Various commercial spots

2010-Law & Order Los Angeles TV series

2010-Beach Bar The Movie-

A-27

Ex. D-1

2010-No Ordinary Family TV series

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 28 day of December, 2010, at

El Cajon , Ca .

Jason LeBlanc

A-28

Ex. D-2

# EXHIBIT "E"

A.29

STATE OF CALIFORNIA    )
                       )  ss.
COUNTY OF              )

The undersigned, being first duly sworn on oath deposes and says:

1. My name is Doug Holgate. I reside at 234 Flower Street, Costa Mesa, California 92627.

2. This affidavit is given to verify that I worked for James S. LeBlanc, Pear Point Project, LLC, on the following date, working on the stated television series:

   On October 21, 2008, I worked for eight (8) hours on Corvette Jacks.

3. This was the only job I worked on for Jim LeBlanc. I requested that I be paid in cash. I was paid $220.50 cash for this job.

4. I did not perform any more covered work other than that reported above.

5. I waive any claim for more benefits from MPI.

Dated: _8-31-09_____

_____
Doug Holgate

SUBSCRIBED AND SWORN TO this _____ day of _____, 2009.

NOTARY PUBLIC in and for the State of California
residing at: _____
My commission expires: _____

_See California Just below._
CMP 8/31/09

State of California    )
                       )  ss
County of Orange       )

Subscribed and sworn to (or affirmed) before me on this
_31st_ day of _AuGuST_, 20 _09_, by
_DouGLAS  STEWART  HoLGATE_
Proved to me on the basis of satisfactory evidence to be the
person(s) who appeared before me.
_Catherine M Patel_
Catherine M. Patel, Notary Public

CATHERINE M. PATEL
Commission # 1853920
Notary Public - California
Orange County
My Comm. Expires Jun 13, 2013

A-30
Ex. E

# EXHIBIT "F"

A-31

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

The undersigned, being first duly sworn on oath deposes and says:

1.  My name is David Emery. I reside at 19995 Sischo Dr., Topanga Canyon, California
    96290.

2.  I am Director and Producer at Lost Continent Films.

3.  This affidavit is given to verify that I hired James S. LeBlanc, Pear Point Project, LLC,
    who worked for me with his assistant Jason LeBlanc to shoot a test for a upcoming
    documentary in Bhutan. The date of the test was November 3, 2007.

Dated: ___11/30/09___

_____
David Emery

SUBSCRIBED AND SWORN TO this 30th day of November_____, 2009.

_____, Brooke Stites
NOTARY PUBLIC in and for the State of California
residing at Marina del Rey
My commission expires: Oct 17, 2010

BROOKE STITES
Commission # 1699158
Notary Public - California
Los Angeles County
My Comm. Expires Oct 17, 2010

A-32
EX. F

# EXHIBIT "G"

A-33

STATE OF CALIFORNIA )
                         ) ss.
COUNTY OF VENTURA )

The undersigned, being first duly sworn on oath deposes and says:

1.      My name is Jim Edwards. I reside at 1522 Patricia Ave. #346, Simi Valley, California 93065.

2.      I am a Director and owner of Barking Weasel Productions in Los Angeles.

3.      This affidavit is given to verify that I retained James S. LeBlanc, Pear Point Project, LLC, who worked for me with the named assistant on the following jobs and dates:

September 27, 2006         Fight Beat/Boxing video with James LeBlanc and Jason LeBlanc

October 23, 2007            Corvette Jacks – a T.V. Pilot with James LeBlanc and Jason LeBlanc

October 21, 2008            Corvette Jacks – a T.V. Pilot with James LeBlanc and Doug Holgate

Dated: _Dec. 12, 2009_____

_Jim Edwards_ (signature)

Jim Edwards

SUBSCRIBED AND SWORN TO this _14_ day of _December_____, 2009.

_SEE Attached_____
NOTARY PUBLIC in and for the State of California
residing at _____
My commission expires: _____

A-34
Ex. 6-1

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

_____   _____
Signature of Document Signer No. 1    Signature of Document Signer No. 2 (if any)

State of California

County of _Los Angeles_

Subscribed and sworn to (or affirmed) before me on this

_14_ day of _December_, 20_07_, by
Date         Month              Year

(1) _James Robert Edwards_
Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

                                    (and

(2) _____
Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature _____
Signature of Notary Public

GWEN BEYER
Commission # 1791482
Notary Public - California
Los Angeles County
My Comm. Expires Feb 18, 2012

Place Notary Seal Above

—————————— OPTIONAL ——————————

*Though the information below is not required by law, it may prove
valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

RIGHT THUMBPRINT
OF SIGNER #1
Top of thumb here

RIGHT THUMBPRINT
OF SIGNER #2
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827

A-35

EX. G-2

# EXHIBIT "H"

A-36

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

The undersigned, being first duly sworn on oath deposes and says:

1.   My name is Bruce Somers.  I am the Director and owner of Sincbox Production Co. .
     which is located at 12100 Wilshire Blvd, Ste. 550, Los Angeles, California 90025.

2.   This affidavit is given to verify that I retained James S. LeBlanc, Pear Point Project,
     LLC, who worked for me with his assistant Jason LeBlanc to shoot a test on a Red
     Camera that I was purchasing for a Sunbeam commercial.  The date of the test was
     February 17, 2008.

Dated:   1 / 20 / 2010

Bruce Somers

SUBSCRIBED AND SWORN TO this _____ day of _____, 2009.

NOTARY PUBLIC in and for the State of California
residing at   L bS   Angcles,   CA
My commission expires:   4. 2. 2010

A-37
Ex. H-1

State of California                    )

County of _Los Angeles_ )                     **CALIFORNIA JURAT**

Subscribed and sworn to (or affirmed) before me on this _20_ day

of _January_ , 20 _10_ , by _Brad Somers_

proved to me on the basis of satisfactory evidence to be the person(s)
who appeared before me.

CARLA WRIGHT
Commission # 1656149
Notary Public - California
Los Angeles County
My Comm. Expires Apr 2, 2010

Signature

Seal

--- OPTIONAL INFORMATION ---

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this jurat to an unauthorized document and may prove useful to persons relying on the attached document.*

### Description of Attached Document

This certificate is attached to a document titled/for the purpose of

Method of Affiant Identification

Proved to me on the basis of satisfactory evidence:
└○ form(s) of identification   ○ credible witness(es)

Notarial event is detailed in notary journal on:
      Page #_____   Entry #_____

Notary contact:_____

Other

☐ Affiant(s) Thumbprint(s)   ☐ Describe

containing _____ pages, and dated _____

© Copyright 2007 Notary Rotary, Inc. 925 29th St., Des Moines, IA 50312-3612   Form JUR01. 12/07.   To re-order, call toll-free 1-877-349-6588 or visit us on the Internet at http://www.notaryrotary.com

A-38

Ex. H-2

# EXHIBIT "B"

# ST. JOHN WALLACE BRENNAN & FOLAN LLP

| LAW OFFICES

21515 Hawthorne Boulevard
Suite 1120
Torrance, CA 90503-6504

Tel (310) 792-1075
Fax (310) 792-0635

Writer's E-Mail:
jrstjohn@swbf.net

April 11, 2011

Benefits/Appeals Committee
Motion Picture Industry Health Plan
P.O. Box 1999
Studio City, California 91614-0999

      **Re:**    <u>Pear Point Project, LLC and James LeBlanc</u>

Dear Committee Members:

      This letter will supplement the January 6, 2011 appeal submitted to you by Pear Point Project, LLC ("Pear Point") and James LeBlanc ("Mr. LeBlanc").

      On March 11, 2011, Kathy Halford sent Appellants' counsel an e-mail advising that a decision on the appeal would be deferred until April 7, 2011, and that it would be helpful if prior to that time Mr. LeBlanc could provide the following additional documents:

      (1)      The cost bible, production records or call sheets from each producer for whom Pear Point provided services on the days that Pear Point employed someone other than Mr. LeBlanc. ("Request No. 1")

      (2)      Time cards showing work performed by Jason LeBlanc for Stu Segal Productions during the week ending September 30, 2006. ("Request No. 2")

      (3)      Time cards showing work performed by Douglas Holgate for any signatory employer other than Pear Point during the week ending October 31, 2008. ("Request No. 3")

      In late March Ms. Halford and Appellants' counsel agreed that the hearing on the appeal would be continued until May 5, 2011. Ms. Halford asked Appellants to submit whatever documents could be obtained by no later than April 15, 2011.

      The following summarizes the results of Appellants' efforts to obtain the requested information. The summary is supported by the declarations of Mr. LeBlanc, James LeBlanc and Douglas Holgate which are attached to this letter.

Ex. B-1

Benefits/Appeals Committee
Motion Picture Industry Health Plan
April 11, 2011
Page 2

who retained Pear Point's services on the days when Pear Point employed an individual in addition to Mr. LeBlanc himself. As explained in the original appeal, these are Jim Edwards, Bruce Somers and David Emory. Copies of the letters sent by Mr. LeBlanc to each of the three individuals are attached as Exhibit "A" to his declaration.

Mr. Edwards and Mr. Somers both replied that the work Pear Point performed was too small to generate a call sheet. Copies of their e-mails to Mr. LeBlanc confirming this are attached as Exhibit "B" to Mr. LeBlanc's declaration. Both e-mails also reconfirmed that on the relevant dates Pear Point employed either Jason LeBlanc or Douglas Holgate in addition to Mr. LeBlanc.

Mr. Emory did not respond to Mr. LeBlanc's letter.

Request No. 2. As set forth in his declaration, Jason LeBlanc was able to obtain a Payroll History Report from Cast & Crew for all work that he performed for Stu Segal Productions in September, 2006.[1] As the Committee members know, Jason worked for Pear Point on September 27, 2006. Appellants assume that there is some concern that Jason may have also worked for Stu Segal Productions on that date.

However, the Payroll History Report shows that this concern is unfounded. In fact, Jason LeBlanc performed no work for Stu Segal Productions in the final week of September, 2006. The Payroll History Report clearly shows that Jason LeBlanc's last week of employment for Stu Segal in that month was the week ending September 23, 2006.

Request No. 3. As with Jason LeBlanc, Douglas Holgate was able to obtain his relevant Payroll History Report from Cast & Crew. Attached as Exhibit "A" to Mr. Holgate's declaration is his Payroll History Report for the period January 1, 2006 through December 31, 2008.

The Payroll History Report shows that while Mr. Holgate performed industry work for other signatory employers in February, March and July of 2008, he did not do so at any time in October, 2008. Pear Point was his only employer in that month.

Appellants believe that the foregoing satisfactorily responds to the information requests made by the Committee.

If anything further is needed, please let us know.

---

[1] Appellants understand that Cast & Crew provides payroll data and related services who are signatory to collective bargaining agreements requiring contributions to the Health and Pension Plans.

B-2

Benefits/Appeals Committee
Motion Picture Industry Health Plan
April 11, 2011
Page 3


Very truly yours,

John R. St. John
Of ST. JOHN, WALLACE, BRENNAN & FOLAN LLP

JRS/amr

cc:  Mr. James LeBlanc
     Ms. Kathy Halford

...0317 LeBlanc\Appeal ltr 04-06-11

B-3

## Supplemental Declaration of Jason LeBlanc

I, Jason LeBlanc, declare:

1.      In September 2006, I did a lot of work for Stu Segall Productions. My brother, James LeBlanc, asked me to see if I could get timecards or other payroll records that would show this work. My brother said that Warner Brothers had these records.

2.      On March 17, 2011, I called Warner Brothers. The person with whom I spoke said I should call Cast & Crew for this information.

3.      On that same day, I called Cast & Crew and spoke with Rachael Gonzalez. She said she would provide the records if I sent a written request along with my Social Security number. I faxed that to her the following day, on March 18, 2011.

4.      On that day Ms. Gonzalez emailed to me the September 2006 Payroll History Report for my work in that month for Stu Segall Productions. A copy of her email and the Payroll History Report are attached hereto as Exhibit "A."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 27 day of March, 2011, at

El Cajon      CA .

Jason LeBlanc

B-4

----- Forwarded Message -----
**From:** Rachel Gonzalez <Rachel.Gonzalez@castandcrew.com>
**To:** "JLeBlanccamera@yahoo.com" <JLeBlanccamera@yahoo.com>
**Sent:** Fri, March 18, 2011 11:42:13 AM
**Subject:** Re-Your Recent Request

Dear Mr. LeBlanc,

I have attached your request as a PDF File attachment to this email.
Please advise if I can be of further assistance.

Thank you,


Rachel Gonzalez
Accounting Clerk Temp
Cast & Crew Entertainment Services, LLC
2300 Empire Avenue, 5th Floor
Burbank, CA 91504
castandcrew.com
Phone: 818-848-6022
Fax-818-848-2965/9484

---

**Cast & Crew is ON THE MOVE!** The Burbank office is now located at 2300 Empire Avenue, 5th Floor, Burbank, CA 91504. Phone numbers will remain the same. Please update your records.

---

CONFIDENTIALITY NOTICE: This e-mail (including attachments) is confidential and may be legally privileged. Information contained in this e-mail message is intended only for the individual to whom it is addressed and is private and confidential. If you are not the intended recipient, any dissemination, retention, distribution or copying of this communication or the use of any information contained herein is strictly prohibited. If you are not the intended recipient of the e-mail, please kindly destroy it and notify the sender immediately by reply e-mail.

B-5

```
18/2011                                          Cast & Crew                                          Page 1
38 am                                        -- Payroll History Report --                            [payhis]
```

```
     Employee: LEBLANC, JASON
k Ending Dates: All dates
   Check Dates: All dates
heck Eff Dates: 09/01/2006 to 09/30/2006
   Report Type: Detail

udes reversing/cancelled checks.
```

---

LANC, JASON                                     M/S: M  Exm: 0                    YTD GROSS:    73,924.17  GROSS:     3,556.37
                                                Res St: CA  Work St: CA           FWT GROSS:     3,556.37  NET:       2,219.18
SEGALL PRODUCTIONS, INC.          VERONICA MARS                         600       1ST ASST PHOTOGRAPHER  DM#: 9
                    EARNINGS      66.9    3,556.37  TAXES          1,301.63             YTD DEDUCTIONS              35.56
CPB 65109820 P      Straight      40.00   1,663.80  FICA             220.49    4,583.30  Work Dues               35.56
60857794 C          Overtime      19.80   1,235.37  Medicare          51.57    1,071.90
Date: 09/07/2006    Double         7.10     590.65  FWT              754.32   14,812.82
Date: 09/02/2006    Vacation               66.55    CA SDI            28.45      591.38
ice #: 6150513                                      CA SWT           246.80    4,775.73

---

LANC, JASON                                     M/S: M  Exm: 0                    YTD GROSS:    76,614.18  GROSS:     2,690.01
                                                Res St: CA  Work St: CA           FWT GROSS:     2,690.01  NET:       1,757.83
SEGALL PRODUCTIONS, INC.          VERONICA MARS                         600       1ST ASST PHOTOGRAPHER  DM#: 9
                    EARNINGS      54.4    2,690.01  TAXES            905.28             YTD DEDUCTIONS              26.90
CPB 65112981 P      Straight      32.00   1,331.04  FICA             166.78    4,750.08  Work Dues               26.90
60880012 C          Overtime      12.90     804.87  Medicare          39.01    1,110.91
Date: 09/14/2006    Double         1.50     124.79  FWT              511.74   15,324.56
Date: 09/09/2006    Meal Pen.              30.00    CA SDI            21.52      612.90
ice #: 6151484      Vacation               66.55    CA SWT           166.23    4,941.96
                    HolidayGua     8.00     332.76

---

LANC, JASON                                     M/S: M  Exm: 0                    YTD GROSS:    77,276.87  GROSS:       662.69
                                                Res St: CA  Work St: CA           FWT GROSS:       662.69  NET:         528.01
SEGALL PRODUCTIONS, INC.          VERONICA MARS                         600       CAMERA OPERATOR/STEADICAM OPERATOR  DM#:
                    EARNINGS               662.69    TAXES            128.05             YTD DEDUCTIONS               6.63
CPB 65113592 P      Rerate Adj            637.20    FICA             -41.09    4,791.17  Work Dues                6.63
60888815 C          Vacation               25.49    Medicare           9.61    1,120.52
Date: 09/14/2006                                    FWT               62.00   15,386.56
Date: 09/09/2006                                    CA SDI             5.30      618.20
ice #: 6152401                                      CA SWT            10.05    4,952.01

---

LANC, JASON                                     M/S: M  Exm: 0                    YTD GROSS:    80,429.62  GROSS:     3,152.75
                                                Res St: CA  Work St: CA           FWT GROSS:     3,152.75  NET:       2,012.34
SEGALL PRODUCTIONS, INC.          VERONICA MARS                         600       1ST ASST PHOTOGRAPHER  DM#: 9
                    EARNINGS      56.7    3,152.75  TAXES          1,108.88             YTD DEDUCTIONS              31.53
CPB 65117000 P      Straight      40.00   1,982.40  FICA             195.47    4,986.64  Work Dues               31.53
60908589 C          Overtime      14.70     917.17  Medicare          45.71    1,166.23
Date: 09/21/2006    Double         2.00     166.38  FWT              641.31   16,027.87
Date: 09/16/2006    Meal Pen.              7.50     CA SDI            17.13      635.33
ice #: 6153402      Vacation               79.30    CA SWT           209.26    5,161.27

---

LANC, JASON                                     M/S: M  Exm: 0                    YTD GROSS:    83,946.09  GROSS:     3,516.47
                                                Res St: CA  Work St: CA           FWT GROSS:     3,516.47  NET:       2,226.06
SEGALL PRODUCTIONS, INC.          VERONICA MARS                         600       1ST ASST PHOTOGRAPHER  DM#: 9
                    EARNINGS      60.6    3,516.47  TAXES          1,255.25             YTD DEDUCTIONS              35.16
CPB 65120808 P      Straight      40.00   1,982.40  FICA             218.02    5,204.66  Work Dues               35.16
60938465 C          Overtime      17.10   1,138.60  Medicare          50.99    1,217.22
Date: 09/28/2006    Double         3.50     291.17  FWT              743.15   16,771.02
Date: 09/23/2006    Meal Pen.              25.00    CA SDI             0.00      635.33
ice #: 6154613      Vacation               79.30    CA SWT           243.09    5,404.36

$\mathcal{B}$-6

/18/2011

Cast & Crew
-- Payroll History Report --

Page 2
[payhis]

AL FOR LE BLANC, JASON

| | | | | | FWT GROSS: | 13,578.29 | GROSS:<br>NET: | 13,578.29<br>8,743.42 |
|---|---|---|---|---|---|---|---|---|

| EARNINGS | | | TAXES | | | DEDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|
| Straight | 238.6 | 13,578.29 | FICA | 4,699.09 | | 600 Wkdues | | 135.78 |
| Overtime | 152.00 | 6,959.64 | Medicare | 841.85 | | | | 135.78 |
| Double | 64.50 | 4,096.01 | FWT | 196.89 | | | | |
| Meal Pen. | 14.10 | 1,172.99 | CA SDI | 2,712.52 | | | | |
| Rerate Adj | | 62.50 | CA SWT | 72.40 | | | | |
| Vacation | | 637.20 | | 875.43 | | | | |
| HolidayGua | 8.00 | 317.19 | | | | | | |
| | | 332.76 | | | | | | |

---

ND TOTAL

| | | | | | FWT GROSS: | 13,578.29 | GROSS:<br>NET: | 13,578.29<br>8,743.42 |
|---|---|---|---|---|---|---|---|---|

| EARNINGS | | | TAXES | | | DEDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|
| Straight | 238.6 | 13,578.29 | FICA | 4,699.09 | | 600 Wkdues | | 135.78 |
| Overtime | 152.00 | 6,959.64 | Medicare | 841.85 | | | | 135.78 |
| Double | 64.50 | 4,096.01 | FWT | 196.89 | | | | |
| Meal Pen. | 14.10 | 1,172.99 | CA SDI | 2,712.52 | | | | |
| Rerate Adj | | 62.50 | CA SWT | 72.40 | | | | |
| Vacation | | 637.20 | | 875.43 | | | | |
| HolidayGua | 8.00 | 317.19 | | | | | | |
| | | 332.76 | | | | | | |

---

B.7

## Supplemental Declaration of James LeBlanc

I, James LeBlanc, declare:

1. On March 22, 2011, in response to a request from my attorney, I sent the letters attached hereto as Exhibit "A" to the following individuals:

Bruce Somers

Jim Edwards

David Emery

2. On March 25, 2011, I received email responses from both Mr. Edwards and Mr. Somers. These responses are attached hereto as Exhibit "B".

3. As of the date of this Declaration I have not received any response from Mr. Emery.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 5 day of April, 2011 at _Friday Harbor_ Washington.

James LeBlanc

B - 8

Bruce Somers
12100 Wilshire Blvd., Ste. 550
Los Angeles, California 90025

Dear Mr. Somers,

You may recall that some time ago you were kind enough to give me an affidavit that I could use in Pear Point's dispute with the Motion Picture Industry Health Plan. To refresh your recollection I am attaching a copy of your affidavit.

The dispute is still continuing, and is now before the Health Plan's Appeals Committee. The Appeals Committee has asked me to provide any "cost bibles, production records, or call sheets" that might help to show that Jason LeBlanc worked for Pear Point on February 27, 2008.

If any such records are still available please copy and mail to me as soon as possible. I must provide them to the Appeals Committee by April 20, 2011. I will pay for any copying or mailing costs. Please mail to:

> James LeBlanc
> Pear Point Project, LLC
> 5027 Pear Point Rd.
> Friday Harbor, Washington 98250

If you do not have any such records please let me know. Thanks.

Sincerely,

James LeBlanc

G-9

4/6/2011

Jim Edwards
1522 Patricia Avenue, #346
Simi Valley, California 93065

Dear Mr. Edwards,

You may recall that some time ago you were kind enough to give me an affidavit that I could use in Pear Point's dispute with the Motion Picture Industry Health Plan. To refresh your recollection I am attaching a copy of your affidavit.

The dispute is still continuing, and is now before the Health Plan's Appeals Committee. The Appeals Committee has asked me to provide any "cost bibles, production records, or call sheets" that might help to show that Jason LeBlanc and Douglas Holgate worked for Pear Point on September 27, 2006 (Jason), October 23, 2007 (Jason), and October 21, 2008 (Doug).

If any such records are still available please copy and mail to me as soon as possible. I must provide them to the Appeals Committee by April 20, 2011. I will pay for any copying or mailing costs. Please mail to:

James LeBlanc
Pear Point Project, LLC
5027 Pear Point Rd.
Friday Harbor, Washington 98250

If you do not have any such records please let me know. Thanks.

Sincerely,

James LeBlanc

B-10

4/6/2011

David Emory
19995 Sischo Drive
Topanga Canyon, California 96290

Dear Mr. Emory,

You may recall that some time ago you were kind enough to give me an affidavit
that I could use in Pear Point's dispute with the Motion Picture Industry Health Plan.  To
refresh your recollection I am attaching a copy of your affidavit.

The dispute is still continuing, and is now before the Health Plan's Appeals
Committee.   The Appeals Committee has asked me to provide any "cost bibles,
production records, or call sheets" that might help to show that Jason LeBlanc worked for
Pear Point on November 3, 2007.

If any such records are still available please copy and mail to me as soon as
possible.  I must provide them to the Appeals Committee by April 20, 2011.  I will pay
for any copying or mailing costs.  Please mail to:

> James LeBlanc
> Pear Point Project, LLC
> 5027 Pear Point Rd.
> Friday Harbor, Washington 98250

If you do not have any such records please let me know.  Thanks.

Sincerely,

James LeBlanc

B-11

4/6/2011

**From:** James Edwards <mediajim50@yahoo.com>
**Date:** March 25, 2011 10:06:00 AM PDT
**To:** James <jimleblanc1@gmail.com>
**Subject: Motion Picture Heal Plan Dispute**

Dear Jim,

As you recall, the jobs we did were small and there was no need for formal "call sheets" to be issued.
All of our communication was done by cell phone and You/ Jason and You/Doug showed up on time and
we shot the job.

If you need anything further from me, please let me know.

Sincerely,
Jim Edwards, President, Barking Weasel Productions

ß·12

**From:** Bruce Somers <bruces@sincbox.com>
**Date:** March 25, 2011 8:06:35 AM PDT
**To:** James <jimleblanc1@gmail.com>
**Subject: Your Pear Point Case**

Hi Jim,

I don't have records for this shoot because it was just a test that required you , me and a camera assistant.  We would never generate call sheets for something this simple.

Let me know if there's anything else I can provide for you.

regards,
bruce somers, jr.
s i n c b o x
12100 wilshire boulevard | suite 550 | los angeles | california | 90025
[t] 310.566.6701 | [f] 310.943.1705 | [e] bruces@sincbox.com |

sincbox [w] www.sincbox.com | [follow]    [blog]    [link]    [watch]    [like]

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations.  Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized.  If you received this e-mail in error, please advise me (by return e-mail or otherwise) immediately.

Ce courrier électronique est confidentiel et protégé.  L'expéditeur ne renonce pas aux droits et obligations qui s'y rapportent.  Toute diffusion, utilisation ou copie de ce message ou des renseignements qu'il contient par une personne autre que le (les) destinataire(s) désigné(s) est interdite.  Si vous recevez ce courrier électronique par erreur, veuillez m'en aviser immédiatement, par retour de courrier électronique ou par un autre moyen.

B-13

## SUPPLEMENTAL DECLARATION OF DOUGLAS HOLGATE

I, Douglas Holgate, declare:

1.      On March 28, 2011, I received a telephone call from Jim LeBlanc. He asked me to call Cast & Crew and ask for payroll records for any producer that I may have worked for in October of 2008.

2.      Although I do not recall working for any company other than Pear Point in October, 2008, I did in fact call Cast & Crew about this. I spoke with Ted Atler. He asked me to put my request in writing and fax it to him. I did so on March 30, 2011.

3.      On April 1, 2011, Mr. Atler emailed me the attached work history for the period January 1, 2006 through December 31, 2008.

4. To the best of my recollection, the attached work history accurately reflects my employment during the time period except for the work I did for Pear Point.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this _7'th___ day of April, 2011 at Costa Mesa, California.


_____
Douglas Holgate

B-14

```
From:Cast and Crew              818 848 2985          03/31/2011 10:57    #121 P.001/002
```

```
03/31/2011                              Cast & Crew                                    Page 1
11:00 am                          -- Payroll History Report --                         [paynls]
```

Employee: HOLGATE, DOUGLAS S.
Week Ending Dates: All dates
Check Dates: All dates
Check Eff Dates: 01/01/2008 to 12/31/2008
Report Type: Detail

Includes reversing/cancelled checks.

---

| HOLGATE, DOUGLAS S. | | | H/S: M  Exm: 1 | | YTD GROSS: | 1,044.28 | GROSS: | 1,844.99 |
| | | | Res St: CA  Work St: CA | | FWT GROSS: | 1,844.28 | NET: | 1,342.02 |
| ABC STUDIOS | | SAINT OF CIRCUMSTANCE | | SAG | DAY PLAYER | DWF: 3 | | |
| | EARNINGS | 9.0 | 1,844.38 | TAXES | | YTD | | |
| Chk: TTB 85613865 P | Straight | 8.00 | 1,318.02 | FICA | 102.36 | | | |
| Seq: 83316153 C | Overtime | 1.00 | 276.36 | Medicare | 114.35 | 114.35 | | |
| Chk Date: 10/26/2008 | Stunt | | 250.00 | FWT | 26.74 | 26.74 | | |
| W/E Date: 03/00/2008 | | | | CA SDI | 207.49 | 207.49 | | |
| Invoice #: 6318592 | | | | CA SWT | 14.76 | 14.76 | | |
| | | | | | 79.02 | 79.02 | | |

| HOLGATE, DOUGLAS S | | | H/S: M  Exm: 1 | | YTD GROSS: | 1,921.38 | GROSS: | 759.00 |
| | | | Res St: CA  Work St: CA | | FWT GROSS: | 759.00 | NET: | 618.35 |
| ABC STUDIOS | | SAINT OF CIRCUMSTANCE | | SAG | DAY PLAYER | DWF: 4 | | |
| | EARNINGS | 8.0 | 759.00 | TAXES | | YTD | | |
| Chk: TTB 85619661 P | Straight | 8.00 | 759.00 | FICA | 143.64 | | | |
| Seq: 83423926 C | | | | Medicare | 47.00 | 243.13 | | |
| Chk Date: 04/10/2008 | | | | FWT | 11.01 | 56.86 | | |
| W/E Date: 03/08/2008 | | | | CA SDI | 65.73 | 483.80 | | |
| Invoice #: 6324591 | | | | CA SWT | 6.07 | 31.37 | | |
| | | | | | 10.77 | 175.28 | | |

| HOLGATE, DOUGLAS S. | | | H/S: M  Exm: 1 | | YTD GROSS: | 3,762.38 | GROSS: | 1,318.00 |
| | | | Res St: CA  Work St: CA | | FWT GROSS: | 1,318.00 | NET: | 1,018.55 |
| ABC STUDIOS | | SAINT OF CIRCUMSTANCE | | SAG | DAY PLAYER | DWF: 3 | | |
| | EARNINGS | 8.0 | 1,318.00 | TAXES | | YTD | | |
| Chk: TTB 85314612 P | Straight | 8.00 | 1,318.00 | FICA | 299.44 | | | |
| Seq: 83333379 C | | | | Medicare | 81.72 | 159.67 | | |
| Chk Date: 01/27/2008 | | | | FWT | 19.11 | 49.85 | | |
| W/E Date: 03/15/2008 | | | | CA SDI | 149.58 | 417.67 | | |
| Invoice #: 6323481 | | | | CA SWT | 10.64 | 25.30 | | |
| | | | | | 38.49 | 117.51 | | |

| Total for HOLGATE, DOUGLAS S. | | for payroll company CAC-DTV Payroll | | | FWT GROSS: | 3,921.38 | GROSS: | 3,921.38 |
| | | | | | | 3,921.38 | NET: | 2,970.94 |
| | EARNINGS | 25.0 | 3,921.38 | TAXES | 945.44 | | | |
| | Straight | 24.00 | 3,395.05 | FICA | 243.13 | | | |
| | Overtime | 1.00 | 276.33 | Medicare | 56.86 | | | |
| | Stunt | | 250.00 | FWT | 483.80 | | | |
| | | | | CA SDI | 31.37 | | | |
| | | | | CA SWT | 128.28 | | | |

---

| HOLGATE, DOUGLAS S. | | | H/S: M  Exm: 1 | | YTD GROSS: | 1,543.64 | GROSS: | 1,543.64 |
| | | | Res St: CA  Work St: CA | | FWT GROSS: | 1,543.64 | NET: | 1,151.19 |
| BROTHERS PRODUCTIONS, LLC | | BROTHERS | | 600 | DIR OF PHOTOGRAPHY | DWF: 2 | | |
| | EARNINGS | 10.0 | 1,543.64 | TAXES | 377.01 | YTD | DEDUCTIONS | 15.44 |
| Chk: FSB 85618934 P | Straight | 8.00 | 1,090.91 | FICA | 95.71 | 95.71 | 600 Widues | 15.44 |
| Seq: 85254194 C | Overtime | 2.00 | 420.69 | Medicare | 22.38 | 22.38 | | |
| Chk Date: 03/13/2008 | Vacation | | 43.84 | FWT | 192.30 | 192.30 | | |
| W/E Date: 02/09/2008 | | | | CA SDI | 12.35 | 12.35 | | |
| Invoice #: 6316205 | | | | CA SWT | 54.27 | 54.27 | | |

| HOLGATE, DOUGLAS S. | | | H/S: M  Exm: 1 | | YTD GROSS: | 1,584.21 | GROSS: | 40.57 |
| | | | Res St: CA  Work St: CA | | FWT GROSS: | 40.57 | NET: | 16.73 |
| BROTHERS PRODUCTIONS, LLC | | BROTHERS | | 600 | DIR OF PHOTOGRAPHY | DWF: 2 | | |
| | EARNINGS | | 40.57 | TAXES | 3.43 | YTD | DEDUCTIONS | 0.41 |
| Chk: FSB 85618746 P | Hot Payout | | 40.57 | FICA | 2.55 | 98.23 | 600 Widues | 0.41 |
| Seq: 85715392 C | | | | Medicare | 0.59 | 22.97 | | |
| Chk Date: 05/23/2008 | | | | FWT | 0.00 | 192.30 | | |
| W/E Date: 02/09/2008 | | | | CA SDI | 0.32 | 12.67 | | |

$B-15$

4/11/2011

From:Cast and Crew                    818 848 2965         03/31/2011 10:58        #121 P.002/002

---

03/31/2011                                    Cast & Crew                                        Page 2
                                        -- Payroll History Report --                            [payhis]

---

Invoice #: 8308597                               CA SWT              0.00        54.27

HOLGATE, DOUGLAS S                              H/S: M  Exe: 3                   YTD GROSS:    3,629.66  GROSS:    2,645.45
WORLDWIDE COMPETITION PRODUCTIONS, LLC          Res St: CA  Work St: NV         FWT GROSS:    2,645.45   NET:    1,473.45
EARNINGS         TOP GEAR                                                       WAGE  AERIAL COORDINATOR  DAYS: 5
Cra: PSB 66671653 P    Straight    14.0    2,645.45   TAXES          571.66              YTD   DEDUCTIONS
Sec: 61041720 C -      Travel       6.00   1,509.91   FICA           128.87    225.66   690 wages           0.00
Chk Date: 07/24/2008   Overtime     4.00    545.45   Medicare        29.66     52.63                       0.00
W/E Date: 07/05/2008                2.00    409.09   FWT            317.76    510.06
Invoice #: 835/833                                   CA SDI           0.00     12.67
                                                     CA SWT          97.72    151.99
                                                     NV SWT           0.00      0.00

Total for HOLGATE, DOUGLAS S.           for payroll company Cast&Crew Production Services
                                                                     FWT GROSS:    3,629.66  GROSS:    3,629.66
                                                                                             NET:      2,461.41
        EARNINGS       24.0    3,629.66   TAXES          663.40                DEDUCTIONS
        Straight       16.00   2,161.82   FICA           225.02                690 wages          15.06
        Travel          4.00    545.45   Medicare        52.63                                   15.85
        Overtime        4.60    816.19   FWT            510.06
                                48.57   CA SDI           12.67
                                43.64   CA SWT         151.99
                                        NV SWT           0.00

................................................................................................................

GRAND TOTAL                                                          FWT GROSS:    7,551.04  GROSS:    7,551.04
                                                                                             NET:      5,640.35
        EARNINGS       49.0    7,551.04   TAXES        1,894.84                DEDUCTIONS
        Straight       40.00   5,376.92   FICA           468.16                600 wages         15.85
        Travel          4.00    545.45   Medicare       109.49                                   15.85
        Overtime        5.00   1,054.56   FWT           992.86
        Hol Payout               48.57   CA SDI          44.04
        Stunt                   280.60   CA SWT         293.27
        Vacation                 43.64   NV SWT           0.00

................................................................................................................

---

................................................................................................................
                                  --- End of Payroll History Report ---
................................................................................................................

Begin forwarded message:

From: Ted Aller <Ted.Aller@castandcrew.com>
Date: March 30, 2011 11:38:39 AM PDT
To: "dougholgate@gmail.com" <dougholgate@gmail.com>
Subject: FW: Scanned Images

B-16

4/11/2011

**From:** cclp9-scan@castandcrew.com [mailto:cclp9-scan@castandcrew.com]
**Sent:** Wednesday, March 30, 2011 12:34 PM
**To:** Ted Atler
**Subject:** Scanned Images

**Cast & Crew is ON THE MOVE!** The Burbank office is now located at 2300 Empire Avenue, 5th Floor, Burbank, CA 91504. Phone numbers will remain the same. Please update your records.

**CONFIDENTIALITY NOTICE:** This e-mail (including attachments) is confidential and may be legally privileged. Information contained in this e-mail message is intended only for the individual to whom it is addressed and is private and confidential. If you are not the intended recipient, any dissemination, retention, distribution or copying of this communication or the use of any information contained herein is strictly prohibited. If you are not the intended recipient of the e-mail, please kindly destroy it and notify the sender immediately by reply e-mail.

B-17

4/11/2011

EXHIBIT "C"

# WOHLNER KAPLON PHILLIPS YOUNG & CUTLER

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
16501 VENTURA BOULEVARD
SUITE 304
ENCINO, CALIFORNIA 91436

(818) 501-8030

FACSIMILE: (818) 501-5306

Jeffrey L. Cutler
Sally S. Frontman
Kathryn J. Halford
Dana K. Kann
Joseph J. Kaplon
Amanda Lively

Ralph M. Phillips
Elizabeth Rosenfeld
Renée Sánchez
Jeffrey S. Wohlner
Kenneth P. Young
1950-2003

May 10, 2011

*Via Electronic and Regular Mail*
jrstjohn@swbf.net

John St. John, Esq.
St John, Wallace, Brennan & Follan, LLP
21515 Hawthorne Boulevard, Suite 1120
Torrance, California 90503-6504

Re:    NOTICE OF DENIAL OF APPEAL
       Motion Picture Industry Pension and Health Plans
       James LeBlanc - Removal of Reported Hours, Pear Point, LLC

Dear John:

The Board of Directors of the Benefits/Appeals Committee ("BAC") of the Motion Picture Industry Pension and Health Plans ("Plans") considered the appeal of your client, James LeBlanc at their meeting of May 5, 2011. As agreed, the hearing on the appeal from the action taken by the Plans was continued to May 5, 2011, to allow sufficient time for Mr. LeBlanc to provide additional evidence in support of his appeal. This letter is written to inform you that after consideration of all evidence which was provided in your appeal letter of January 6, 2011 and supplemented by your later correspondence, the BAC has denied the appeal on the following grounds:

Specifically, the BAC determined that Mr. LeBlanc's company, Pear Point, LLC was a loan-out company, and that the evidence submitted in support of Mr. LeBlanc's claim that an employee-employer relationship existed between Pear Point LLC and the two other individuals reported by Pear Point, LLC was insufficient to accomplish the purposes of the Plan, and is not credible.

The Trust Agreement at Article V, Section 6, *Report on Contributions,* grants to the Directors the authority "to cause the audit or inspection of the records of any Employer which may be pertinent in connection with the said Contributions and/or reports and insofar as same may be necessary to accomplish the purposes of this Plan."

EX. C-1

John St. John, Esq.
St John, Wallace, Brennan & Follan, LLP
May 10, 2011
Page 2

The maintenance by an Employer of payroll records which can be audited is necessary to accomplish the purposes of the Plan to ensure that all funds to which the Plan is entitled are paid by the Employer and that Plan benefits are not paid to persons who are not entitled to receive them.

At the time the Pear Point, LLC became signatory it was provided with the "Contribution Requirement Information Sheet" which contained a section entitled "Adequate Records." The section quotes the language at Article V, Section (d) of the Trust Agreement which provides that in the absence of "adequately substantiating records of the Employer, the Directors may, based upon other evidence or facts of a particular case, also determine in their sole discretion that no contributions are due." This section is in fact referenced at page 6, fn. 7 of your appeal letter. Although you suggest that this language does not require an employer to maintain written records, it is clear it vests in the Directors the sole discretion to make determinations which are necessary to accomplish the purposes of the Plan in the absence of Employer records. The Directors have exercised the discretion vested in them and have determined that Pear Point, LLC was a loan-out company and that no contributions were due nor should have been accepted from Pear Point, LLC.

With regard to the second basis for appeal, the Plans simply do not permit contributions by loan-out companies. The Agreement and Declarations of Trusts for each of the Trusts and the SPD grant to the Directors the discretion to interpret the Plan language. The SPD expressly provides that the "Benefits/Appeals Committee shall have the discretion and final authority to *interpret and apply the Plan of Benefits, the Trust Agreement, and any and all rules governing the Plan.*"(SPD, at page 63.)

I previously provided you with a copy of the SPD. Please refer the SPD at pages 3-4, "Basic Requirements for Plan Eligibility." On page 4 under the section entitled "Loan-Out Companies" it unambiguously states that "A Loan-Out Company is not allowed to contribute directly to the Plan." In response to your argument in support of the appeal, the only time contributions are accepted for the services of the Controlling Employee of a loan-out company is when the Controlling Employee's services are loaned to a participating Employer who is obligated to make contributions directly to the Plan on behalf of the loaned-out employee. This is consistent with the contribution obligation of a signatory employer under the IATSE Basic Agreement. Moreover, this is consistent with the Directors' interpretation of Exhibit A, Article II Section 4(b) of the Trust Agreements for the respective Trusts. Your client was notified of the prohibition in the SPD, and the Eligibility Requirements initially provided to Pear Point, LLC by the Plan and later again described in the 2006 cancellation letter to Pear Point, LLC from the Plan.

C-2

John St. John, Esq.
St John, Wallace, Brennan & Follan, LLP
May 10, 2011
Page 3

These provisions were never intended to provide a mechanism to allow participants to simply self-pay contributions to gain health eligibility. Accordingly, the Health Plan will continue its efforts to recover the overpaid medical benefits paid to or on behalf of Mr. LeBlanc and his eligible dependents, and the removal of hours with respect to the Pension Plan will stand.

In accordance with the terms of the Plans, the decision of the BAC is final and binding upon all parties, including the Participant and any person claiming under the Participant. Your client has the right to bring a court action in accordance with Section 502(a) of ERISA, 29 U.S.C. §1132(a) if he wishes to contest the appeal determination. In the event you wish to proceed with a civil action in either state or federal court, it must be filed within 180 days from May 10, 2011, the date of the notice of the BAC's decision. You also have the right to receive free of charge, upon written request, copies of documents, records and other information relevant to your client's claims.

Sincerely,

WOHLNER, KAPLON PHILLIPS
YOUNG & CUTLER

Kathryn J. Halford

KJH:ajm

cc:    Mr. Charles Gordon
       Arlene Withers, General Counsel

C-3

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV11- 4181 GAF (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
James LeBlanc, an individual; Pear Point Project, LLC, a Washington limited liability company

**DEFENDANTS**
Motion Picture Industry Health Plan, a Trust;
Motion Picture Industry Pension Plan, a Trust

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
John R. St. John of St. John, Wallace, Brennan & Folan LLP
21515 Hawthorne Blvd., Suite 1120
Torrance, CA 90503-6504; Telephone: 310-792-1075

Attorneys (If Known)
Kathryn J. Halford of Wohlner Kaplon Phillips Young & Cutler
16501 Ventura Blvd., Suite 304
Encino, CA 91436  Telephone: 818-501-8030

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No  ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☑ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco- mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV11  04181**

FOR OFFICE USE ONLY:  Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

      ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

      ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

      ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | San Juan County, State of Washington |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____    Date  5/16/2011

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

Name & Address:
John R. St. John  (CA State Bar No. 54643)
St. John, Wallace, Brennan & Folan LLP
21515 Hawthorne Blvd., Suite 1120
Torrance, CA  90503-6504

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| James LeBlanc, an individual; Pear Point Project, LLC, a Washington limited liability company, <br><br> PLAINTIFF(S) <br><br> v. <br><br> Motion Pictures Industry Health Plan, a Trust; Motion Picture Industry Pension Plan, a Trust, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV11 04181 GAF (Ex)** <br><br><br> **SUMMONS** |
|---|---|

TO:   DEFENDANT(S): Motion Picture Industry Health Plan; and Motion Picture Industry Pension Plan

A lawsuit has been filed against you.

Within  21  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, John R. St. John _____, whose address is 21515 Hawthorne Blvd., Suite 1120, Torrance, CA 90503 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ MAY 1 6 2011 _____

By: _____
Deputy Clerk

CHRISTOPHER POWERS

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

